STATE OF FLORIDA, ex rel. T. R. HODGES, *Plaintiff in Error,*
vs. ERNEST AMOS, Comptroller of the State of Florida,
*Defendant in Error.*

En Banc.

Opinion filed April 4, 1931.

*Parker & Parker,* for Plaintiff in Error;

*Fred H. Davis,* Attorney-General, and *H. E. Carter,* Assistant, for Defendant in Error.

WHITFIELD, J.—Chapter 6532, Acts of 1913, contains a provision that

"The Governor shall appoint one competent person, who shall fill the office of Shell Fish Commissioner of the State of Florida, and who shall not be financially interested in the oyster or clam industry, who shall hold the office for a period of four years and until his successor is appointed and qualified." Sec. 1790 (1232) C. G. L.

The law became effective June 4, 1913. The first appointment of a Shell Fish Commissioner under the act was made July 19, 1913, for four years from that date. On July 19, 1917, another appointment was made for four years. The incumbent resigned April 15, 1921, and the relator was appointed and commissioned on April 16, 1921, to hold the office until July 19, 1921, the remainder of the unexpired term. On July 19, 1921, the relator was appointed and commissioned for four years. "At the expiration of the four year term of said office beginning on July 19, 1921, and ending July 18, 1925, the Relator continued to act as such Shell Fish Commissioner and performed the duties thereof and received the emoluments therefor down to the fifth day of March, 1926, when the said Relator was again appointed and commissioned for four years from March 5, 1926."

On January 1, 1930, another person was appointed and commissioned to hold the office until July 19, 1933.

The relator brought mandamus proceedings in the Circuit Court against the State Comptroller to require the payment of the salary to relator for the months of January and February 1930.

The Circuit Judge held that "when the Governor appointed a successor to the relator and such appointee qualified on January 1, 1930, relator's tenure of office terminated and thenceforth he no longer was entitled to receive further compensation as such officer," and dismissed the mandamus proceedings against the State Comptroller. Relator took writ of error.

The question presented is the legality of the appointment of a successor to the relator on January 1, 1930, the relator contending that his appointment and commission on March 5, 1926, for four years made the appointment of a successor on January 1, 1930, illegal.

Section 7, Article XVI, constitution, provides that "the legislature shall not create any office, the term of which shall be longer than four years." Unless otherwise duly provided where an office is created, the term begins when the office is first filled. In Re Advisory Opinion to the Governor, 76 Fla. 649, 80 So. 519; In Re Advisory Opinion to the Governor, 78 Fla. 5, 82 So. 612. The provision of section 14, Article 16, that an officer shall continue in office after the expiration of his official term until a successor is qualified is intended to prevent a hiatus, State ex rel. v. Murphy and Re Comrs. Duval Co., 32 Fla. 138, 161, 13 So. 705; Advisory Opinion, 65 Fla. 434, 62 So. 363; 22 R. C. L. 550, and does not affect the cycle of the term fixed by law which ends at the expiration of the statutory term periodically whether the incumbent or another is the successor; otherwise the organic limitation as to terms may be violated by an officer holding over for a length of time after his term has expired and then being commissioned for a full term from the date of the commission and not from the end of the previous term as the constitution contemplates. See State v. Young, 68 So. 241 (La.)

The rule announced in Advisory Opinion, 16 Fla. 841, was changed by section 33 of Article V of the constitution of 1885. See State ex inf. v. Williams, 222 Mo. 268, 121 S. W. 64, State ex rel. Withers v. Stonestreet, 99 Mo. 361, 12 S. W. 895.

The provision of section 14, Article XVI, constitution, that "all State, county and municipal officers shall continue in office after the expiration of their official terms until their successors are duly qualified," contemplates that while such an officer "shall continue in office, or perform the official duties of the office *after the expiration of his official term,* and until his successor is duly qualified, still the office is vacant as to the new term, in the sense that any office is vacant which is not occupied by a person chosen to fill it for such term." "Vacancy means that the office is without such an occupant as precludes the filling of it in any mode which the constitution may provide, or may recognize as lawful." State ex rel. v. Murphy and Re Comrs. Duval Co., 32 Fla. 138, 163, 13 So. 705. See also State ex rel. Wilkinson v. Hingle, 50 So. 616 (La).

Section 7 of Article IV, constitution, provides that "when any office, from any cause, shall become vacant, and no mode is provided by this constitution or by the laws of the State for filling such vacancy, the Governor shall have the power to fill such vacancy by granting a commission for the unexpired term."

When the four year term beginning in July, 1921, expired in July, 1925, a new term then began, and for the purpose of making an executive appointment for the new term there was a vacancy in the office in July, 1925, though the occupant, by virtue of section 14, Article XVI, constitution, continued in office until a successor was duly qualified. The executive appointment to fill the vacancy

caused by the expiration of the term was not made until March 5, 1926, which was more than seven months after the new term began, and section 7, Article IV, constitution, authorized the governor "to fill such vacancy" caused by the expiration of the former term "by granting a commission for the unexpired term" which began in July, 1925, and ended in July, 1929. This is the necessary result of the operation of section 14 of Article XVI and section 7 of Article IV of the constitution upon the statute under which the relator was appointed to the office.

The relator's term of office under the law expired in July, 1929, and the office was vacant for the purpose of an executive appointment of a successor to the incumbent. The holding over of the incumbent under section 14, Article XVI, of the constitution into the succeeding term was subject to the executive power to "fill such vacancy by granting a commission for the unexpired term" ending July 19, 1933. The commission issued was legal and served to terminate the right of the relator to hold the office under section 14, Article XVI of the constitution. The fact that the commission issued to the relator on March 5, 1926, was for four years from that date does not control as against the law. Advisory Opinion, 14 Fla. 277; 31 Fla. 1, 12 So. 14, 18 L. R. A. 594.

Affirmed.

BROWN, J., AND HUTCHISON AND JOHNSON, Circuit Judges, concur.

BUFORD, C.J., AND ELLIS, J., dissent.

TERRELL AND DAVIS, J.J., disqualified.

BUFORD, C.J. (dissenting):

The statement of the facts in this case, as correctly stated by the Circuit Judge in his findings, were as fol-

lows: The Relator, T. R. Hodges, claimed to have been lawfully entitled to, and held the office of State Shell Fish Commissioner from March 5th, 1926 to March 5th, 1930, under and by virtue of a commission issued to him by the Governor of the State, appointing said relator to such office ''for four years from the fifth day of March, A. D. 1926,'' and, pursuant to such appointment, relator duly qualified and took over the office, holding same and discharging the duties and functions thereof until January 1st, 1930, when the then Governor of the State appointed and commissioned E. C. Strickland as such Shell Fish Commissioner, for a term to run from January 1st, 1930, to July 19th, 1933; and that, then and thereupon said relator, at the command and direction of the Governor relinquished the visible properties of the office of Shell Fish Commissioner to the said E. C. Strickland, under protest, claiming to lawfully hold such office until March 5th, 1930. It further appears that relator was not otherwise suspended or removed from such office, and that he has not been paid the salary claimed to be due him as such officer for the months of January and February, 1930, or any part thereof, though he has duly requested respondent to issue warrant or warrants therefor, which respondent has heretofore refused to do, which alleged duty on the part of respondent is sought to be enforced in these proceedings.

A motion to quash said alternative writ was denied.

Respondent's return to said writ admits refusal of respondent to issue warrants in compliance with relator's request, and justifies such refusal on the ground that relator was neither *de facto nor de jure* Shell Fish Commissioner after the appointment and qualification of his successor, alleging that the term of office of relator expired

July 19th, 1929. In support of this contention, respondent alleges that the office of Shell Fish Commissioner was created by chapter 6532 laws of Florida, Acts of 1913, which became effective June 4th, 1913, by which Act the term of said office was fixed for periods of four years. That the first appointment of such officer was on July 19th, 1913, the appointee being commissioned for four years; that the second appointment was made to J. A. Williams for four years, on July 19th, 1917, he resigning on April 15th, 1921; and relator was thereupon appointed and commissioned to hold such office for the unexpired term of his predecessor, ending July 18th, 1921; that relator, on July 19th, 1921, was appointed and commissioned to said office for four years ending July 18th, 1925; and that he continued to hold over in said office until the fifth day of March, 1926, then he was again appointed and commissioned to such office for four years from said last date; but that the commission then issued to the relator for the term of four years was without authority in law, but should have been for four years from July 19th, 1925, that is until July 19th, 1929; and that thereafter he was a holdover in such office until the appointment and qualification of his successor, which, it is alleged, occurred on January 1st, 1930; that on this date one, E. C. Strickland, having received an appointment and commission from the Governor of the State to said office, took over the same and thenceforth has performed the duties and functions of such office, and received the salary provided by law therefor. The premises considered, respondent claims that he is without authority in law to comply with relator's salary claims.

Upon the filing of such return, a motion for a peremptory writ of mandamus notwithstanding the allegations contained in said return, was submitted, thus raising the

sufficiency of the return to justify the position taken by respondent.

The principal question raised in argument, and here presented for determination, is when relator's title to office of Shell Fish Commissioner under his appointment of March 5th, 1926, terminated? It is the contention of relator that when his term of office fixed by the appointment of July 19th, 1921 expired on July 18th, 1925, by the lapse of four years, and no other appointment was made until March 5th, 1926, he was continued in office by Section 14, Article 16, of the Constitution until the Governor made an appointment on March 5th, 1926, by the terms of which he was appointed to serve four years from the date thereof; and that his new term began to run from the date of his commission and was for the full period of four years from such date. On the other hand, it is the contention of respondent that the relator's official term ended four years from the expiration of his prior official term.

The learned Judge further states:

"By chapter 6532, Acts of 1913, Sec. 1790 Compiled General Laws, it is provided that, 'The Governor shall appoint one competent person who shall fill the office of Shell Fish Commissioner of the State of Florida, and who shall not be financially interested in the oyster or clam industry, who shall hold the office for a period of four years and until his successor is appointed and qualified.' The language of the statute is plain and simple, and, giving that provision alone its liberal construction, the meaning appears obvious that the appointee to this office shall hold it, according to the express terms of the statute, 'For a period of Four Years.' There is nothing in the statute that limits the term of one appointee by reference to the time served by any previous incumbent. The statute prescribes simply

the length of the term and the authority by whom the officer is· to be appointed; but no time is fixed for the beginning or the ending of the period that such appointee shall serve.  Nor does the section of the statute creating the office technically prescribe 'terms of office' in contradistinction to 'terms of the officer.'  Unless, therefore, there are some other provisions of the statutes or Constitution of the State, limiting or otherwise explaining the language of the stated statute, it must be given its usual and ordinary meaning.''

The provisions of the Constitution applicable to the matter here under consideration will be found in Section 7 and Section 14 of Article 16.  Section 14 provides, ''All State, County and Municipal officers shall continue in office after the expiration of their official terms until their successors are duly qualified.''  Section 7 provides, ''The legislature ·shall not create any office the term of. which shall be longer than four years.''

The wording of the statute must be given effect.

The statute provides, ''The Governor shall appoint one competent person who shall fill the office of Shell Fish Commissioner of the State of Florida and who shall not be financially interested in the oyster or clam industry, who shall hold the office for a period of four years, and until his successor is appointed ,and qualified''.  This language we conceive to mean that when a Shell Fish Commissioner is appointed under this statute by the Governor he shall hold the office to which he is appointed for a period of four years and after holding for the term he may continue to hold the office, under the provisions of the Constitution and the statute, until his successor is appointed and qual· ified.  The period of time existing between the date of the end of the four year period and the date of the appoint-

ment of the successor constitutes no part either of the term of the incumbent or of the term of the successor. It is a hiatus between the terms during which the functions of the office are performed under the sanction of the Constitution by the incumbent of the immediately past term.

A question so like the one now before us as to be governed by the same principles and conclusions was presented to this Court by Governor Drew in his letter of January 18, 1877, and was answered in an advisory opinion to the Governor under date of January 19, 1877, 16 Fla. 841. In that case the Court said:

"The language of the Constitution is plain and simple: 'There shall be seven Circuit Judges appointed by the Governor and confirmed by the Senate, who shall hold their office for eight years.' (Art. VI Sec. 7). The remaining clause of this section provides permanent judicial sub-divisions composing each circuit. There is nothing in this which limits the time of service of one appointee by reference to the time served by a previous one. The plain literal construction of that section is, that whenever the two acts, appointment by the Governor and confirmation by the Senate, unite, the result is that the party is entitled to the office, and the express declaration is that he shall hold the office for eight years. Unless, therefore, there is some other provision of the Constitution limiting or otherwise explaining this language, it must have its usual and ordinary effect. There is nothing here establishing a term of office to exist between fixed dates of months or years, nor is there anything having the most remote reference to an unexpired term, or to a vacancy in an office, as distinct from the office itself. There is no other provision of the Constitution which changes or affects this section. The only general clause of the Constitution referring to vacancies in offices is that found in sec. 7 of Art.

V, and this Court has heretofore held (13 Fla. 12) that the power there granted is not a power to fill an unexpired term but to fill a special vacancy, embraced in the period between the time at which the office is made vacant and the filling of the office by an election. This section too relates exclusively to vacancies in elective offices. There being, therefore, no provision in the Constitution by which a vacancy in this office is filled, the Legislature has provided for an incumbent for the time embraced between the origin of a vacancy and the appointment to hold the office for the constitutional period. (Chap. 1633, Sec. 2, Laws of Fla.) This action of the legislative department of the government shows that it did not think that the Governor and Senate were to appoint for the *whole* of the unexpired time embraced in the period for which the first incumbent was to hold, (the remainder of the eight years) for the reason that this legislation has, for a portion of this period, vested the exclusive power of appointment in the Governor.

The conclusion we reach is that a Judge of a Circuit Court, appointed by the Governor and confirmed by the Senate, holds his office for eight full years, and that no part of a previous eight years during which another has held the office, (but who has vacated it) enters into the computation of the time for which the second appointee holds.''

If the statute had created the office of Shell Fish Commissioner and had declared that the term of office of the Shell Fish Commissioner should be four years, and had then provided that the office should be filled by appoint· ment by the Governor, we think it might be well contended that the principles announced in the case of State vs. Murphy, 32 Fla. 138, 13 Sou. 705, might be applied, but the language of this statute, chapter 6532 Acts of 1913,

does not purport to fix the term of office; it merely limits it to four years by prescribing the period for and during which each incumbent may hold the same. The statute provides that the Governor shall appoint one competent person who shall fill the office of Shell Fish Commissioner of the State of Florida, * * * * who shall hold the office for the period of four years and until his successor is appointed and qualified. A new term of four years, therefore, begins upon the appointment of each appointee of the Governor to fill this position and, therefore, we think that the principles applied in the Murphy case, supra, are not applicable here.

In the case of People vs. Langdon the Supreme Court of California, 8 Cal. 1, referring to the office of Resident Physician of the Asylum, say:

"The act creating the office provides, that the officer shall hold his office for two years, and until his successor is appointed and qualified.

It will be observed that at the date of Langdon's appointment, the term of Reid had expired. Immediately upon the appointment of Langdon, a proceeding was instituted to determine the rights of the parties to the office; Reid contending that he was entitled to continue in office, until his successor was elected and qualified by the Legislature. This question was fully considered in the case of 'The People v. Robert K. Reid,' July term 1856, in which it was held that the law creating the office had limited the term of the incumbent to two years and that the words 'until his successor shall be appointed and qualified' were not intended to extend the term indefinitely, but to prevent an interregnum in the office, by authorizing the old incumbent to act as a *de facto* officer until such time as the appointing power, or the power to fill vacancies, could act on the subject.

The appellants now contend that after Reid's term expired, the Governor had authority to fill the office for the whole term, and second, that the Governor had power to fill a vacancy in the office until the end of the unexpired term.

I shall consider the second proposition first in order. The tenth section of the act provides that, 'If any vacancy shall occur in the office of resident, or assistant-physician, such vacancy shall be filled for the unexpired term by appointment of the Governor.' The eighth section of the fifth article of the Constitution of this State provides that when any office shall from any cause become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill the same by granting a commission, that shall expire at the end of the next session of the legislature, or the next election by the people.''

In the case before us the law has provided for filling the vacancy, by appointment for the balance of the unexpired term. Waiving the question, whether the Legislature could constitutionally provide for filling a vacancy beyond the period when the appointing power could act upon the subject of the vacancy, it becomes of the first importance to ascertain what is meant by the words 'unexpired term'; whether they relate to the office or officer. The counsel for the appellant has very ingeniously assumed that *the legal term of office* is two years; that the term commenced to run from the date of Reid's commission, and that there was a fraction of the term at the date of the defendant's appointment.

This is a mere *petitio principii*. If it is to be taken for granted, that the legislature has fixed distinct terms for the office, which commence and terminate on particular days, then the case of the relator is at an end.

The error of the argument, in my opinion, consists in assuming that the term of the office, and of the of-

ficer, are one and the same, when in point of fact, there may be no term in an office, but a term in the incumbent. In other words, that there are no fixed periods whereby a term as apart from the officer, begins and leaves off. To illustrate the distinction more fully, the term of the office of Judges of the Supreme and District Courts is fixed at six years. These offices become vacant at a particular point of time, and if no person is appointed or chosen to fill them at the time provided, he who is afterwards elected only takes the remainder of the unexpired term of the office.

In the act under consideration, there are no words employed, which even by implication, would warrant us in assuming that the Legislature intended to create distinct terms in the office of resident-physician, as contradistinguished from that of the officer, or that any term commenced running in the office, except from the induction of the incumbents, but that they simply intended to provide for the duration of the office of the incumbent. For the purpose of ascertaining the intention, let us look for a moment at the practical workings of the construction contended for by the defendant. Reid was elected on March 27th, 1854. Now, admitting that the term of the office commenced running from that date, it must expire on the twenty-eighth of March, 1856. If then, the Legislature, which was the appointing power, and which was in session, and in a situation to act, failed by some accident to elect before the thirtieth, such election would be void, and after one hour, or one day of the new term had commenced, even although the Legislature was in session, the Governor would have the right to appoint for two years, minus the day or hour that had expired. Or again, The Legislature may fail to agree in an election; will such failure be construed to deprive the succeeding body of a power of appointment which they have reserved to themselves?

128

Let us suppose that the Legislature had elected some one in the place of Reid, one month after his term expired, from what period of time would the commission of the new incumbent have dated—from the expiration of the two years that Reid was authorized to hold, or from the date of his election. Most certainly from the latter, for the law says the officer shall hold his office for two years. Now, if there was a term in the office, and the party had not been elected until one month after the expiration of the old term, it is evident that he could not hold but one year and eleven months, instead of the two years that the law says he shall.''

In other jurisdictions a contrary view has been expressed but we think the better reasoning is with the California Court and, therefore, hold that the term of office of the Relator did not expire until the Fifth day of March, 1930.

ELLIS, J., concurs.