293 So.2d 40 (1974)
The STATE of Florida ex rel. Reubin O'D. ASKEW, Governor of the State of Florida, Petitioner,
v.
Barbara B. THOMAS, Respondent.
No. 44436.
Supreme Court of Florida.
March 20, 1974.
*41 Robert L. Shevin, Atty. Gen., and Barry Scott Richard, Deputy Atty. Gen., for petitioner.
William D. Anderson, Jr., Anderson & Dungey, Stuart, Charles E. Miner, Jr., Tallahassee, and James T. Schoenbrod, State Bd. of Ed., Miami, for respondent.
DEKLE, Justice.
The ever-evolving elective process is again before us in an interesting constitutional question of residence requirements to hold office. Our analysis and conclusions indicate that by virtue of Florida's legal requirements there could not be a "Senator Robert F. Kennedy Election" for public office within the state, as in the case of the late and honored United States Senator, resident in Massachusetts but so elected in 1965 as an "inhabitant" of the State of New York.[1]
For state office, actual residence in the area to be represented is required, at least where a school board member is concerned, as in the cause sub judice. The requirement for residence is based upon our constitutional and statutory restrictions hereinafter set forth; neither can the elected school board member continue to hold that office after moving from the area of residence in which he was elected, despite his serving, upon election, the entire district which includes different residence areas.
Quo warranto is the vehicle for our consideration of the respondent school board official's eligibility under our constitution and statutes to retain her office as school board member after moving from the residence area from which she was elected. Respondent Thomas was elected a member of the Martin County School Board for a 4-year term commencing January 1971. At the time of her election she resided in School Board Member Residence Area No. 1. After her election and while serving, she married in 1973 and moved to Residence Area No. 4, where she continues to live at present. The boundaries of the residence areas in question have not changed since the election. F.S. § 230.19, F.S.A., provides that the office of any school board member shall be vacant when he removes his residence from the residence area from which he was elected. Respondent contends that this impinges upon the qualifications for this office which she urges are expressly prescribed by the constitution, thereby precluding amplification by statute.[2]
*42 The State's contention is that by moving from the residence area from which respondent was elected, she has thereby vacated her school board office pursuant to F.S. § 230.19, F.S.A., which provides as follows:
"230.19 Vacancies; how filled.  The office of any school board member shall be vacant when he removes his residence from the school board member residence area from which he was elected. All vacancies on the school board shall be filled by appointment by the governor." (emphasis ours)
F.S. § 230.04, F.S.A., is also of significance. The first sentence of that section tracks the constitution in providing that school boards shall be composed of not less than 5 members;[3] the second sentence of the statutes reads as follows:
"Each member of the school board shall be a qualified elector of the district in which he serves, and shall be a resident of the school board member residence area from which he is elected as hereinafter prescribed, unless otherwise provided by law." (emphasis ours)
If this section 230.04 were the only statute on the question, then perhaps it could be said that there was not an express statutory requirement that vacates the office upon the incumbent's removal to another residence area. But § 230.04 concludes, with respect to the residence area requirement, that such residency shall be "as hereinafter prescribed." Such later prescription is set forth in § 230.19 expressly vacating that office upon removal of the official from his residence area as seen in the language of § 230.19 quoted above. We must accordingly give recognition to this statutory requirement where there is not a contrary constitutional provision on the subject.
We have consistently held that statutes imposing additional qualifications for office are unconstitutional where the basic document of the constitution itself has already undertaken to set forth those requirements. This "constitutional voice" is the direct voice of the people which controls and cannot be changed by their representatives  the legislators.[4] First, however, we must look to the constitutional provision to see if indeed this basic predicate for invoking the rule is present in our case. It does not appear to be. Art. IX, § 4(a), Fla. Const. 1968, provides as follows:
"In each school district there shall be a school board composed of five or more members chosen by vote of the electors for appropriately staggered terms of four years, as provided by law." (emphasis ours)
Respondent reads this as setting forth the qualifications of the school board members whereas we see it as simply saying that such school board members shall be "chosen ... as provided by law." No qualifications are mentioned; therefore, the constitutional principle urged by respondent and mentioned above is not invoked. The same reason prevents application of respondent's suggested contention that statutes here involved, existing at the time of enactment of the new 1968 constitution, were "repealed by implication" as inconsistent with the constitutional provision of 1968 Const. Art. IX, § 4(a).[5] But as we have pointed out, that new section of the constitution does NOT address itself to qualifications of the school district members, but only to the manner of choosing such members. Thus, statutes in this respect remain intact and viable, unaffected by this new constitutional provision.
Respondent also suggests that rejection by the drafting committee of a different *43 provision for this § 4(a) of Art. IX of the 1968 Constitution, which would have imposed specific residency requirements on school board members, means that the drafters of the constitution intended that neither should the Legislature have authority to impose residency requirements. Quite to the contrary, the rejection of specific constitutional residency requirements argues IN FAVOR OF legislative control; thus, then existing (and still present) statutory residency requirements apply. The constitutional drafting committee accepted this result by declining to include qualifications within the constitutional provision and thereby recognized such statutory residency qualifications; in sum, the committee simply did not choose to address itself to the subject of residency requirements or to set forth ANY qualifications for school board members in the constitution, leaving it to be "as provided by law." By its rejection of specific requirements that were offered and refused, it left the matter of qualifications to these statutes.
Respondent's further confidence in Art. X, § 3, of the 1968 Constitution is misplaced. That article provides:
"Section 3. Vacancy in office.  Vacancy in office shall occur upon the creation of an office, upon the death of the incumbent or his removal from office, resignation, succession to another office, unexplained absence for sixty consecutive days, or failure to maintain the residence required when elected or appointed, and upon failure of one elected or appointed to office to qualify within thirty days from the commencement of the term." (emphasis ours)
It will be seen that here the drafters of the 1968 Constitution included as one of the instances creating a vacancy, the "failure to maintain the residency required when elected or appointed", as in the instance of such requirement for school board members under F.S. § 230.04. This is an express constitutional recognition of the type of statutory requirements which we have been discussing. It further does not address itself only to the time of election, as urged, but expressly uses the term "maintain," which is a continuing verb, applying during any of the term in which the office is held; otherwise, there would be no reason to spell out in Art. X, § 3, the "failure to maintain the residence required" as one of the instances creating a vacancy. Such provision completes in every respect the constitutional and statutory consistency of the residency requirements with respect to school board members and the continuing requirement of that residency in the area from which such person is chosen; if he leaves, he leaves his office and a vacancy occurs in that residence area to be filled.
Respondent suggests that the people would be denied their choice of her as the elected official for the office in question if the residency requirements of § 230.19 are invoked, pointing out that she serves the entire county once she is elected, even though elected from the one district. Apparently, the people, through the constitution and their Legislature, thought differently in giving priority to the residency requirement. The constitution and the statutes reflect residency in the school board member's home district as being paramount to the personal life of the elected official which might cause him to choose to leave.
There is understandable logic and reason for the residency requirement in this position; firsthand knowledge of conditions within a particular school board area are important to the service of the elected member. Perhaps it was felt in drafting the statute that the elected official would not be as responsive or as informed or as sensitive to the needs of that area if she did not live there with the people and their problems with which she was elected to deal. Certainly this is not an unreasonable prerogative of the electorate, nor an unreasonable requirement of the office.
Upon petition, the writ of quo warranto heretofore issued; the return thereto by *44 respondent shows no good cause or right why respondent should continue to hold the office of member of the Martin County School Board, and accordingly said office is hereby declared vacant in Residence Area No. One in accordance with Fla. Const. art. X, § 3, and Fla. Stat. § 230.04 and 230.19, F.S.A. Any actions of the school board in which respondent may have participated, however, would be valid school board actions until respondent's replacement, by virtue of her de facto status in that office until replaced.
It is so ordered.
ADKINS, C.J., and BOYD, McCAIN and CARLTON (Retired), JJ., concur.
NOTES
[1] U.S.Const. Art. I, §§ 2 and 3.
[2] See footnote 4 infra.
[3] Art. IX, § 4(a), Fla. Const. 1968, F.S.A.
[4] Thomas v. State ex rel. Cobb, 58 So.2d 173 (Fla. 1952); Maloney v. Kirk, 212 So.2d 609 (Fla. 1968); Wilson v. Newell, 223 So.2d 734 (Fla. 1969); cf. Holley v. Adams, 238 So.2d 401 (Fla. 1970).
[5] In re Advisory Opinion to the Governor, 132 So.2d 163, 169 (Fla. 1961).